JUSTICE LEAPHART
specially concurring.
¶22 In the Court’s opinion we conclude that § 7-1-120, MCA, does not expressly “prohibit” the cities from exercising self-governing powers. I write this special concurrence to point out that, in addition, § 7-1-120, MCA, does not, by its terms, have any effect on the anti-smoking ordinances in question. In briefing this matter, the parties and various amici have all assumed that the ordinances in question are “more restrictive” than the provisions of the Montana Clean Indoor Air Act, §§ 50-40-101 to 109, MCA (MCIAA), in that the ordinances deny access to smokers who would otherwise be guaranteed access to “some public places,” including VGM establishments. Denial of this supposedly guaranteed smoker access to VGM establishments resulted in a loss of revenue from VGMs. To protect that source of revenue, the Legislature passed § 7-1-120, MCA. Upon close examination, it is apparent that the Legislature’s assumption that the MCIAA guarantees access to smokers is entirely unfounded.
¶23 Section 7-1-120, MCA, exempts VGM establishments from any city ordinances that are “more restrictive” than the provisions of the MCIAA. In order to analyze whether the Helena nonsmoking ordinance is “more restrictive” than the MCIAA, the ordinances must be interpreted in the context of the purposes and provisions of the MCIAA. As the State clearly explains in its brief on appeal, when *79 Helena adopted the ordinance in question, VGM licensees reported immediate and significant decreases in revenues. Operators reported that their customers use tobacco products at a higher rate than the general population, and, when Helena applied its ordinance, their smoking patrons went elsewhere.
¶24 VGMs are heavily regulated and taxed by the State. Title 23 part 5, Montana Code Annotated. The tax revenue is calculated as a share of the net profits of the machines and distributed primarily to local governments. Under § 15-1-121(9), MCA, local governments’ base year entitlement includes tax revenues from VGMs so that, to the extent the VGM contribution is reduced by actions of local governments, the State’s funding obligation increases. In response, the 2003 Legislature adopted HB 758 to exempt VGM establishments from local ordinances “more restrictive” than the MCIAA, which purports to “provide for reserved areas in some public places for those who choose to smoke.” Section 50-40-102, MCA. The question becomes thus: Is the Helena ordinance “more restrictive” than the MCIAA as far as guaranteeing the designation of smoking areas in some public places and thereby ensuring greater tax revenue to the State?
¶25 What are the “restrictions” of the MCIAA?
¶26 The intent and purpose of the MCIAA is set forth in § 50-40-102, MCA, as follows:
The legislature, mindful of its constitutional obligations under Article II, section 3, and Article IX of the Montana constitution, has enacted the Montana Clean Indoor Air Act of 1979. It is the legislature’s intent that the requirements of this part provide adequate remedies for the protection of the environmental fife support system. The purpose of this part is to protect the health of nonsmokers in public places and to provide for reserved areas in some public places for those who choose to smoke.
¶27 The purpose of the Act is clear from the face of the statute. That is, the legislature sought to protect the health of nonsmokers in public places and “to provide for reserved areas in some public places for those who choose to smoke.” Clearly, the purpose was not only to protect the health of nonsmokers, but also to enact certain restrictions establishing a minimum floor whereby smokers would be guaranteed the designation of smoking areas in “some public places.”
¶28 Significantly, the MCIAA is completely “non-restrictive” as to bars and taverns where meals are not served since such establishments are exempt from the MCIAA. Section 50-40-107(2), MCA. Since the MCIAA does not apply to such establishments, it does not “restrict” their activities. If the MCIAA does not restrict their activities, logic dictates *80 that the Helena ordinance cannot, as to them, be “more restrictive” than the MCIAA. Thus, bars and taverns where food is not served do not benefit from the exemption set forth in § 7-1-120, MCA. As to establishments, including bars and taverns where meals are served, the specific requirements of the MCIAA are contained in § 50-40-104, MCA, which provides as follows:
(1) The proprietor or manager of an enclosed public place shall:
(a) designate nonsmoking areas with easily readable signs;
(b) reserve a part of the public place for nonsmokers and post easily readable signs designating a smoking area;
(c) designate the entire area as a smoking area by posting a sign that is clearly visible to the public stating this designation; or
(d) designate and reserve the entire area as a nonsmoking area.
¶29 In terms of reserving or designating an area as smoking or nonsmoking, the four subparts of § 50-40-104(1), MCA, are stated in the disjunctive “or.” That is, the proprietor or manager must designate either the whole establishment as smoking or nonsmoking, or reserve some areas for each group by posting appropriate signs. Significantly, however, the MCIAA does not require a proprietor to reserve or to designate any or all of the establishment as a smoking area. Thus, despite the stated purpose of “providing for reserved areas in some public places for those who choose to smoke,” the restrictions imposed by the MCIAA leave the existence of such smoking areas entirely up to the discretion of the individual proprietor. For example, pursuant to § 50-40-104(l)(d), MCA, all the managers or proprietors in the City of Helena could choose to designate their respective establishments as “nonsmoking.” In other words, the MCIAA does not require that any of the managers or proprietors in question reserve any areas for smoking. Likewise, the managers and proprietors could all choose to designate their establishments as smoking areas, § 50-40-104(l)(c), MCA, thereby defeating the stated purpose of protecting the health of nonsmokers in public places.
¶30 Section 7-1-120, MCA, seeks to protect smoker access and state revenue by exempting VGM establishments from any local ordinances that are “more restrictive” than the provisions of the MCIAA. It assumes, as the MCIAA so states in its purpose clause, that the MCIAA requires that “smoking areas” be reserved in some public places for those who choose to smoke. However, the substantive provisions of the MCIAA are permissive rather than mandatory ánd do not actually require that managers or proprietors reserve any areas *81 for smokers. Since the MCIAA does not restrict managers or proprietors to guaranteeing smoking areas, the Helena ordinance is not “more restrictive.” An ordinance cannot be deemed more restrictive than legislation which is not restrictive.
¶31 “Every reasonable doubt as to the existence of a local government power or authority shall be resolved in favor of the existence of that power or authority.” Section 7-1-106, MCA. Accordingly, although § 7-1-120, MCA, exempts VGM establishments from ordinances that are “more restrictive” than the MCIAA, that exemption has no application to the ordinances in question. Since § 7-1-120, MCA, does not interfere with the enforcement of the ordinances adopted by the self-governing units, it does not implicate Article XI, Section 6, or Article II, Sections 1 or 2, of the Montana Constitution.